**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| NEVEN EYEWEAR, LLC, a Florida limited liability company,<br><br>      Plaintiff,<br><br>v.<br><br>NEVEN EYEWEAR, LLC, a Nevada limited liability company; 37 VENTURES, LLC, a Nevada limited liability company; LE VENTURES, LLC, a California limited liability company; and Khoi Le, an individual residing in Nevada,<br><br>      Defendants. | Civil Action No. 6:24-cv-01204 |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION WITH**
**MEMORANDUM OF LAW IN SUPPORT**

Plaintiff Neven Eyewear, LLC, a Florida limited liability company ("Neven Eyewear" or "Plaintiff"), pursuant to Federal Rule of Civil Procedure 65(a), moves the Court for a preliminary injunction enjoining Defendants Neven Eyewear, LLC, a Nevada limited liability company; 37 Ventures, LLC; Le Ventures, LLC; and Khoi Le (collectively, "Defendants") from extrajudicially and offensively asserting the fraudulent and invalid NEVEN EYEWEAR Trademark Registration No. 6,883,673 (hereinafter "'673 Mark"), including, without limitation, through filing takedown notices with social media and ecommerce platforms, and by sending baseless threatening cease and desist letters.

As detailed below, Defendants fraudulently procured the '673 Mark, engaged in unscrupulous and egregious unfair competition, and tortiously interfered with Plaintiff's online business. Defendants will not stop unless or until enjoined by this Court. Plaintiff

is a legitimate company with federally registered trademarks for the NEVEN brand, and this Court cannot allow Defendants to continue to try and destroy Plaintiff's business. Defendants have no legal right to interfere with and cause harm to the Neven Eyewear business.

Jonathan Strauss founded Neven Eyewear, which has been supplying quality, affordable eyewear to consumers under its brand NEVEN since 2020. In 2021, Plaintiff engaged Defendant Khoi Le ("Le") and his company Defendant Le Ventures, LLC ("Le Ventures" and, together with Defendant Le, the "Le Defendants") as independent contractors to provide programming services. After repeated performance failures and other issues, Plaintiff ceased contracting work to the Le Defendants in early March 2024. Disgruntled by the cessation of the relationship, Defendant Le orchestrated the series of extrajudicial and unlawful attacks on Plaintiff's business that give rise to this action. The Le Defendants and 37 Ventures, LLC ("37 Ventures") secretly established an LLC in Nevada, a shell company with no eyewear business bearing an identical name: Neven Eyewear, LLC, a Nevada limited liability company (the "Defendant LLC"). Without approval from Plaintiff, Defendant Le submitted an application to register a NEVEN EYEWEAR trademark on behalf of the Defendant LLC and, to secure said application, submitted a specimen fraudulently representing Plaintiff's use of Plaintiff's NEVEN EYEWEAR name and related marks on Plaintiff's website as evidence of Defendants' own use. Defendants' application matured into the '673 Mark.

In the weeks since Plaintiff severed the relationship with the Le Defendants, Defendants have misrepresented themselves as the owners of Neven Eyewear to

customers and vendors, including an effort to hijack Plaintiff's Shopify account.[1] When their planned takeover of Plaintiff's e-commerce business was unsuccessful, Defendants' objective shifted to social media takedown. Defendants leveraged their fraudulently obtained trademark registration to petition Shopify to takedown Plaintiff's online storefront and to cause Meta to remove and disable all of Plaintiff's Facebook and Instagram advertisements and accounts. Defendants also threatened to sue Plaintiff for, among other claims, infringement of the invalid, void '673 Mark.

By engaging in the conduct described herein, Defendants violated and, unless restrained and enjoined, will continue to violate federal and Florida law, causing damage and irreparable harm to Plaintiff. Without judicial intervention, Defendants will continue to seek revenge on Neven Eyewear for dissolving their business relationship. A preliminary injunction enjoining Defendants from extrajudicially asserting the '673 Mark is needed to protect the public and to prevent Defendants from relying on the '673 Mark to harm Neven Eyewear's legitimate business. There is no good reason for Defendants to continue use the '673 to cause harm to Plaintiff, harm to the NEVEN brand, and harm to the public. Defendants must stop engaging in unfair competition immediately.

<u>**MEMORANDUM OF LAW**</u>

I. **FACTUAL BACKGROUND**

A. **NEVEN EYEWEAR AND ITS TRADEMARKS**

---

[1] Plaintiff has initiated a separate state court lawsuit against Khoi Le in the Circuit Court of the Eighteenth Judicial Circuit in and for Brevard County, Florida, relating to Mr. Le's ownership claims, 05-2024-CA-029874-XXCA-BC (Decl. of Brian Abergel ¶ 4.) The parties are also codefendants in a separate trademark litigation in the Central District of California, No. 2:24-cv-00906.

Neven Eyewear is a Florida limited liability company that was created on or about August 24, 2020, by Jonathan Strauss and John Muller.[2] (Declaration of Jonathan Strauss ("Strauss Decl"), ¶ 3.) Neven Eyewear is an ecommerce company that sells various glasses, including sunglasses and prescription glasses. (Strauss Decl. ¶ 4.) The majority of its business is done through its online store hosted by Shopify (www.neveneyewear.com). Since the company was created, it has become extremely popular, garnering over 130,000 followers on its Facebook and Instagram accounts. (Strauss Decl. ¶ 5.) Meta advertisements, such as those on Facebook and Instagram, comprise the vast majority of Neven Eyewear's marketing budget. (*Id.*) Approximately 20 million individuals are reached each month through Meta advertising, which results in approximately 25,000 purchases each month and $2 million in revenue. (*Id.*) In May 2024, over 400,000 individuals clicked links to the Neven Eyewear website on Meta advertisements, and there were over 70 million unique impressions on the Neven eyewear Meta advertisements. (*Id.*) Neven Eyewear's online presence is vital to its success. (Strauss Decl. ¶ 6.)

Neven Eyewear is the owner of multiple NEVEN trademarks including U.S. Reg. No. 6330350 ("NEVEN"), as reproduced below, which was registered April 20, 2021. (Declaration of Scott P. Shaw ("Shaw Decl."), ¶ 4, Ex. 8; Strauss Decl. ¶ 15).



---

[2] Mr. Muller has since left Neven Eyewear, and Mr. Strauss is the sole owner and Chief Executive Officer of the company. (Strauss Decl. ¶ 3.)

Neven Eyewear's NEVEN mark is registered in International Class 9 for use with connection with  "Eyewear; eyewear accessories, namely, straps, neck cords and head straps which restrain eyewear from movement on a wearer; Eyewear cases; Eyewear pouches; Eyewear retainers; Eyewear, namely, sunglasses, eyeglasses and ophthalmic frames and cases therefor; Eyewear, namely, sunglasses and eyeglasses; Sunglass cords; Sunglass lenses; Sunglasses; Cases for eyeglasses and sunglasses; Floatable sunglasses; Nose guards which can be worn by attachment to eyewear such as sunglasses and ski goggles; Nose pads for eyewear; Protective eyewear; Protective eyewear and component parts thereof; Safety eyewear; Sports eyewear," as well as International Class 25 for use in connection with  "Hats; T-shirts." (*Id.*)

Neven Eyewear is also the valid owner of the following Neven marks currently pending registration. (Shaw Decl., ¶ 5, Ex. 9; Strauss Decl. ¶ 15.)

| US SERIAL NO. | MARK |
|---|---|
| 98528994 | NEVEN EYEWEAR |
| 97802512 |  |
| 98529033 |  |
| 97865331 |  |

| 98529003 |  |
|----------|----------------------|
| 98529047 |  |

## B.   DEFENDANTS' FRAUDULENT CREATION AND REGISTRATION OF THE '673 MARK

In 2021, Neven Eyewear engaged the Le Defendants, as independent contractors to perform programming services for Plaintiff's Neven Eyewear brand. (Strauss Decl. ¶ 7.) Since 2022, Neven Eyewear has paid the Le Defendants approximately $750,000 for services rendered. (*Id.*) However, at no point in time did Defendant Le, Le Ventures, or any related entity ever have any membership interest or ownership percentage of Neven Eyewear. (Strauss Decl. ¶ 8.)

In early March 2024, Neven Eyewear stopped contracting work to the Le Defendants and severed all relationships with the Defendant Le, in part, because Le Ventures was failing to perform contracted tasks in a timely manner, resulting in wasteful spending and lost revenue. (Strauss Decl. ¶ 9.) Neven Eyewear also severed the relationship because it discovered that Defendant Le had subcontracted Neven Eyewear's work to other programmers—who were also failing to meet deadlines—and that Defendant Le had fraudulently charged thousands of dollars to an American Express card provided to him by Neven Eyewear for the purpose of contracting expenses. (Strauss Decl. ¶ 10.)

Neven Eyewear learned that Defendant Le had secretly established his own LLC in Nevada on October 13, 2021, through Le Ventures and its subsidiary, 37 Ventures, bearing an identical name: Neven Eyewear, LLC (the Defendant LLC). (Shaw Decl., ¶¶ 6-8, Exs. 10-12; Strauss Decl. ¶ 12.) The Defendant LLC is not and never was authorized to sell any products bearing the NEVEN trademarks noted below, and, upon information and belief, the Defendant LLC has never sold *any* products. (Strauss Decl. ¶¶ 12, 15.)

Unbeknownst to Neven Eyewear, in addition to establishing the Defendant LLC, Defendant Le had also secretly registered the '673 Mark for NEVEN EYEWEAR with the PTO on August 9, 2022. (Strauss Decl. ¶ 12; Shaw Decl., ¶ 9, Ex. 13.) Like Neven Eyewear's NEVEN mark, the '673 Mark is registered in International Class 9 for use in connection with "Cases for eyeglasses and sunglasses; Cases for eyewear; Eyeglasses; Eyewear; Eyewear accessories, namely, straps, neck cords and head straps which restrain eyewear from movement on a wearer; Eyewear cases; Eyewear retainers; Eyewear, namely, sunglasses, eyeglasses and ophthalmic frames and cases therefor; Eyewear, namely, eyeglasses; Eyewear, namely, sunglasses; Floatable sunglasses; Nose guards which can be worn by attachment to eyewear such as sunglasses and ski goggles; Nose pads for eyewear; Protective eyewear; Sports eyewear; Sunglass chains and cords; Sunglass cords; Sunglass lenses; Sunglasses." (Shaw Decl., ¶ 9, Ex. 13 at 1.) The Defendant LLC disclaimed the word "Eyewear." (*Id.*)  Neven Eyewear never directed any Defendant to register this mark. (Strauss Decl. ¶ 12.)

As part of the trademark application process, the Defendant LLC was required to submit a specimen demonstrating its use of the NEVEN EYEWEAR mark. (Shaw Decl., ¶ 9, Ex. 13 at 5.)  The specimen that the Defendant LLC submitted in connection with its NEVEN EYEWEAR application was a screenshot from ***Plaintiff's*** website, showing

*Plaintiff's* use of *Plaintiff's* NEVEN marks. (Strauss Decl. ¶ 14, Ex. 2.) The lower portion of the specimen shows that the website in the specimen is https://neveneyewear.com/pages/about-us-our-story," which is Plaintiff's website. (Shaw Decl., ¶ 9, Ex. 13 at 5; Strauss Decl. ¶ 14, Ex. 2.) While Plaintiff has since deleted that webpage and replaced it with https://neveneyewear.com/pages/about-our-neven-story, the language is still largely the same. Plaintiff never gave any Defendant permission to use its website as a specimen. (Strauss Decl. ¶ 14.)

After discovering that the Defendant LLC had fraudulently obtained the '673 Mark using a specimen from Plaintiff's website, Plaintiff filed a petition to cancel the '673 Mark on May 21, 2024. (Shaw Decl., ¶ 10, Ex. 14.)

### C.    DEFENDANTS' RETALIATORY ACTIONS

Around May 2024—just two months after Neven Eyewear severed ties with Defendant Le— Defendant Le began reaching out to Neven Eyewear's clients, vendors, and account holders to redirect the company's online storefront to himself and the Defendant LLC. (Strauss Decl. ¶ 16.) Defendant Le misrepresented himself as the owner of Neven Eyewear.

First, Defendant Le attempted to hijack Neven Eyewear's online store. He contacted Shopify and asked to change the email address of the Neven Eyewear representative to an email address only accessible by Defendant Le. (Strauss Decl., ¶ 17, Ex. 3.) He did this by falsely representing that he was the owner of Neven Eyewear. (*Id.*) This attempt was blocked by Shopify verification protocols, which showed that Mr. Strauss was the rightful owner of the Neven Eyewear online store. (*Id.*)

Then, on around May 21, 2024, Neven Eyewear received a notice from Shopify that the Defendant LLC and Defendant Le had petitioned Shopify to takedown Neven

Eyewear's online store, claiming it infringed the '637 Mark. (Strauss Decl., ¶ 18, Ex. 4.)[3] Neven Eyewear's counsel responded to Shopify, explaining that Defendants' petition was fraudulent and based on an invalid trademark registration subject to a pending cancellation proceeding, and Shopify terminated Defendants' petition. (Strauss Decl., ¶ 19, Ex. 5.)

Just a week later, Neven Eyewear's counsel received correspondence from Defendants' counsel in Florida claiming that Le Ventures is the owner of Neven Eyewear and threatening Neven Eyewear with trademark theft premised on the '673 Mark. (Shaw Decl., ¶ 11, Ex. 15.) Days later, Defendants' counsel sent Neven Eyewear another correspondence, this time demanding that Neven Eyewear turn over its Shopify account to Defendants, among other demands. (Shaw Decl., ¶ 12, Ex. 16.)

After these attempts to interfere with Neven Eyewear's business did not succeed, Defendants turned to social media. On June 12, 2024, Neven Eyewear received communication from Meta that Defendants had claimed that Neven Eyewear's social media accounts infringed the fraudulently-obtained '673 Mark. (Strauss Decl. ¶ 20, Exs. 6-7.) On this basis, Meta removed and disabled Neven Eyewear's Facebook and Instagram advertisements and accounts. (*Id.*) Neven Eyewear's social media accounts were shut down for approximately 24 hours before counsel was able to prove to Meta that Defendants were relying upon fraudulent trademark rights. (Strauss Decl. ¶ 23.) During that time, Neven Eyewear likely lost countless sales and missed opportunities for its

---

[3] Plaintiff's counsel also sent an e-mail to counsel for Khoi Le in another proceeding to inquire about Mr. Le's actions. (Shaw Decl., ¶ 13, Ex. 17). In the same proceeding, Plaintiff's counsel later sent a subsequent e-mail inquiring about Defendant LLC and, to date, have not received any information about the entity. (Shaw Decl., ¶ 14, Ex. 18).

advertisements to reach thousands of viewers, causing both monetary and reputational harm to Neven Eyewear. (Strauss Decl. ¶ 24.)

## II.   ARGUMENT

Disgruntled by Mr. Strauss and Neven Eyewear severing ties, Defendants have repeatedly attempted to sabotage Neven Eyewear's business by filing takedowns of Neven Eyewear's ecommerce and social media accounts, while at the same time threatening that they own the same business they are attempting to destroy. As an internet-based e-commerce company that depends on these accounts for its sales, advertising, and business reputation, these shutdowns are incredibly harmful to Plaintiff. The takedowns constitute unfair competition and deceptive practices under Florida law, as well as tortious interference with a business relationship, and must be stopped pending the disposition of Plaintiff's trademark cancellation and fraudulent trademark registration claims. On this basis, a preliminary injunction enjoining Defendants from offensively asserting the '673 NEVEN EYEWEAR mark extrajudicially, including through further online takedowns, is necessary to prevent irreparable harm to Neven Eyewear's business. If Defendants wish to assert the '673 Mark, they must do so through the proper legal channels.

### A.   LEGAL STANDARD

The grant or denial of a preliminary injunction "is a decision within the sound discretion of the district court." *Revette v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 740 F.2d 892, 893 (11th Cir. 1994). The Court has the responsibility to weigh the probabilities of ultimate success at final hearing with the consequences of immediate irreparably injury which could possibly flow from the denial of preliminary relief. *Id.* A preliminary injunction is appropriate if the movant establishes: (1) they will

likely succeed on the merits of their claim; (2) they will suffer irreparable injury unless the injunction is issued; (3) the threatened injury to the movant outweighs any damaged the injunction may cause opposing party; and (4) the injunction is not adverse to the public interest. *Gonzalez v. Governor of Georgia*, 978 F.3d 1266, 1270-71 (11th Cir. 2020); *see also* LR 6.01(b), 6.02 (outlining requirements for preliminary injunctions). Each of these four requirements is plainly satisfied here.

## B.   NEVEN EYEWEAR IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS.

Neven Eyewear brings claims against Defendants for (1) trademark cancellation, (2) fraudulent trademark registration, (3) unfair competition under Florida state law, and (4) tortious interference with a business relationship. As explained below, Neven Eyewear is likely to succeed with regard to each of these claims.

### 1.  TRADEMARK CANCELLATION

Courts have the authority to cancel trademarks that the United States Patent and Trademark Office ("PTO") has registered under the Lanham Act. *See* 15 U.S.C. §1119. To succeed on a trademark cancellation claim, the challenger of the trademark must satisfy two factors. *See Royal Palm Properties, LLC v. Pink Palm Properties, LLC*, 950 F.3d 776, 782 (11th Cir. 2020). First, that the challenger must show that it has standing to petition for cancellation because it is likely to be damaged. *Id.* Second, the challenger must show that there are valid grounds for discontinuing the trademark registration. *Id.* If the trademark at issue "has been on the federal Principal Register in the registrant's name for less than five years, the mark may be cancelled if the petitioner can prove that the registration should have been barred in the first instance." *Coach House Rest. Inc, v. Coach & Six Rests., Inc.,* 934 F.2d 1551, 1558 (11th Cir. 1991).

**First,** Neven Eyewear is likely to be damaged by the Defendants' use of the '673 NEVEN EYEWEAR mark. Neven Eyewear can satisfy this first element—standing—by showing that it has a federally registered trademark. *Playnation Play Sys. v. Velex Corp.*, 924 F.3d 1159, 1171 (11th Cir. 2019). Here, Neven Eyewear is the owner of the federally-registered NEVEN trademark and, thus, this requirement is satisfied.

**Second,** it is undeniable that there are valid grounds for discontinuing the '673 Mark. The PTO should never have registered the '673 Mark because it is likely to be confused with Neven Eyewear's preexisting NEVEN mark and because it was obtained fraudulently. As it relates to likelihood of confusion, the NEVEN EYEWEAR mark should never have been registered because it is likely to be confused with Neven Eyewear's NEVEN mark. *See Coach House Rest., Inc. v. Coach & Six Rests., Inc.*, 934 F.2d 1551, 1559 (11th Cir. 1991) ("In order to cancel a registration under Lanham Act Section 2(d) in this case, petitioner must prove . . . that the registered mark is likely to cause confusion when used in connection with the services of the registrant."). The Defendant LLC disclaimed the word EYEWEAR, thus, the Court must consider whether the Defendant LLC's use of "NEVEN" is confusingly similar to Neven Eyewear's pre-existing NEVEN mark.

The Eleventh Circuit has recognized seven factors as relevant when determining the likelihood of confusion: (1) the strength of the allegedly infringed mark; (2) the similarity of the marks; (3) the similarity of the goods and services the marks represent; (4) the similarity of the parties' trade channels and customers; (5) the similarity of advertising media used by the parties; (6) the intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public. *FCOA LLC v. Foremost Title*, 57 F.4th 939, 947 (11th Cir. 2023). Here, it is unnecessary to go through each of these factors because Defendants'

mark is identical ("NEVEN" for the same goods and services (eyewear)). Moreover, Defendants are attempting to misappropriate the goodwill of the Neven Eyewear, as Defendants used screenshots of the Neven Eyewear website in submitting the trademark application. Thus, there is a likelihood of confusion such that the '673 Mark should never have been registered.

The PTO should also have never registered the '673 Mark because it was obtained fraudulently. A mark can be cancelled for fraudulent procurement if the applicant had, among other things, (1) never individually or personally used the mark, (2) knew others had the right to use the mark, or (3) the specimen included in the application did not belong to the applicant. *See generally MPC Franchise, LLC v. Tarntino*, 826 F.3d 653 (2d Cir. 2016). Each of those circumstances is present here. Trademark applicants must verify that, to the best of their knowledge and belief, "no other person has the right to use such mark in commerce either in the identical form thereof or in such near resemblance to as to be likely. . . to cause confusion." 15 U.S.C. § 1051(a)(3)(D). Defendant Le, who verified the '673 Mark's application, certainly knew of Neven Eyewear's right to use the NEVEN EYEWEAR name; he had worked as an independent contractor for Neven Eyewear for years.

Moreover, a trademark is obtained fraudulently if the applicant submits a false specimen that does not reflect the applicant's use of the mark in commerce. *See Torres v. Torresella*, 808 F.2d 46, 49 (Fed. Cir. 1986) ("If a registrant files a verified renewal application stating that his registered mark is currently in use in interstate commerce and that the label attached to the application shows the mark as currently used when, in fact, he knows or should know that he is not using the mark as registered and that the label attached to the registration is not currently in use, he has knowingly attempted to mislead

the PTO."); *Select Exp. Corp. v. Richeson*, No. 10-80526-CIV-DIMITROULEAS, 2011 WL 13135114, at *7 (S.D. Fla. May 5, 2011) (cancelling trademark where the registrant submitted specimens purporting to reflect his use of the mark, when in fact the specimens represented another entity's use of the mark). Defendants submitted a screenshot from ***Plaintiff's*** website, falsely purporting it to reflect its own use on commerce. This false specimen provides additional grounds for cancellation.

Finally, the '673 Mark was fraudulently registered and must be cancelled because Defendants never used it in commerce. 15 U.S.C. § 1051(d) requires a verified statement that a mark is used in commerce prior to registering. *See* TMEP Introduction (2024) ("The authority of Congress to provide for the registration of marks. . . stems from the power of Congress under the commerce clause of the Constitution of the United States to regulate commerce."). As courts have explained, "although federal law recognizes trademarks, it 'does not create' them; its role is to 'help protect marks' that arise organically out of actual use in commerce." *Norris v. Goldner*, No. 19 Civ. 5491 (PAE) (SN), 2023 WL 5477229, at *12 (S.D.N.Y. Aug. 24, 2023) (quoting *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142 (2015)). The only actual and legitimate use of "Neven Eyewear" in commerce is by Plaintiff Neven Eyewear—not the Defendant LLC. Because Defendants never used the mark in commerce, the PTO should never have registered the '673 Mark.

For these reasons, Neven Eyewear is likely to succeed on its trademark cancellation claim.

## 2.  FRAUDULENT TRADEMARK REGISTRATION

Though fraudulent registration provides the basis for Neven Eyewear's trademark cancellation claim, some courts have recognized fraudulent trademark registration as its

14

own cause of action. *See, e.g.*, *Silva v. Swift*, No. 3:17-cv-00814-J-34JRK, 2017 U.S. Dist. LEXIS 220560, at *11-12 (M.D. Fla. Dec. 12, 2017). Under 15 U.S.C. § 1120, "[a]ny person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in civil action by any person injured thereby for any damages sustained in consequence thereof." 15 U.S.C. § 1120. A plaintiff claiming fraud in the procurement of a federal trademark must establish "(1) the challenged statement was a false representation regarding a material fact; (2) the registrant knew the representation was false (scienter); (3) the registrant intended to deceive the PTO; (4) the PTO reasonably relied on the misrepresentation; and (5) the party suffered damages proximately resulting from such reliance." *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, No. 09-61490-Civ., 2011 WL 2174012, at *14 (S.D. Fla. June 2, 2011).

Neven Eyewear is likely to succeed on its fraudulent trademark registration claim. Khoi Le and the Defendant LLC represented to the PTO that the specimen submitted was theirs, that they were using the NEVEN EYEWEAR mark in commerce, and that they were unaware of any other entities with rights to the NEVEN EYEWEAR mark—all of which were knowingly false statements. The PTO reasonably relied on those representations because use of the mark in commerce is a prerequisite to trademark registration. And Neven Eyewear suffered damages resulting from such reliance because Defendants have asserted the fraudulently-obtained trademark to takedown Neven Eyewear's ecommerce platforms and profiles. No legitimate trademark owner would attempt to interfere with and harm its own goodwill. Only a fraudulent trademark owner would resort to underhanded tactics to try and torpedo legitimate business. Neven Eyewear is likely to succeed on this claim.

### 3.  UNFAIR COMPETITION UNDER FLORIDA STATE LAW

Next, Neven Eyewear is likely to succeed on its unfair competition claim under Fla. Stat. § 501.24 ("FDPTA"), which prohibits unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices. There are three elements that must be proven to establish a claim of unfair competition: (1) a deceptive act or unfair practice, (2) causation, and (3) damages. *SunGard Pub. Sector, Inc. v. Innoprise Software, Inc.,* No. 6:10-CV-1815-ORL-28, 2012 WL 360170, at *5 (M.D. Fla. Feb. 2, 2012) (quoting *KC Leisure, Inc. v. Haber,* 972 So.2d 1069, 1073 (Fla. 5th DCA 2008)).

Each element of an FDPTA claim is present here. Defendants engaged in a deceptive acts and unfair practices including, *inter alia*, misrepresenting the source of the specimen to the PTO and suggesting that they were using the NEVEN EYEWEAR mark in commerce; claiming to be the owner of Neven Eyewear to Shopify; and approaching multiple internet-based storefronts and platforms to takedown the Neven Eyewear's online store, advertisements, and profiles, after being unsuccessful to transfer the Shopify storefront to Defendant Le. These compounding actions led to Neven Eyewear's accounts being deactivated, its advertisements not running, and, consequently, lost sales and harm to its business reputation. Other courts have found similar conduct to constitute a FDPTA violation. *See, e.g.*, *Gaffigan v. Individual*, No. 23-62077-CIV-COHN/VALLE, 2023 WL 9032341, at *2 (S.D. Fla. Nov. 20, 2023) (granting preliminary injunction and noting that plaintiff was likely to succeed on its FDPTA claim where defendants were offering legal services online that were fictitious and injured plaintiff's business and reputation by depriving plaintiff of the goodwill attached to its name); *Marksman Sec. Corp. v. P.G. Sec., Inc.*, No. 0:19-cv-62467-KMM, 2020 WL 12188373, at *13 (plaintiff successfully

stated a claim under FDPTA where defendant created a social media profile impersonating plaintiff). Thus, Neven Eyewear is likely to succeed on its FDPTA claim.

### 4. TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

Finally, Neven Eyewear is likely to succeed on its tortious interference with a business relationship claim. Under Florida state law, the elements of a tortious interference with a business relationship are: (1) the existence of a business relationship, (2) the defendant's knowledge of the business relationship, (3) the defendant's intentional and unjustified interference with the relationship, and (4) damage to the plaintiff. *Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001) (citing *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla. 1994)). Agreements with an online sales platform to sell goods therein, or agreements for online advertising, constitute a business relationship for purposes of a tortious interference claim. *See, e.g., Home Racer LLC v. AKRacing Am., Inc.*, No. 20-81854-CV-MIDDLEBROOKS, 2021 WL 3419239, at *1, 4 (S.D. Fla. May 12, 2021) (tortious interference claim where defendant interfered with plaintiff's relationship with Amazon by filing a fraudulent complaint with Amazon that plaintiff was selling counterfeit goods); *ESR Performance Corp. v. JVMAX, Inc.*, No. 6:18-cv-1601-Orl-37GJK, 2019 WL 13082967, at *3-4 (M.D. Fla. May 7, 2019) (tortious interference where defendant interfered with plaintiff's business relationships by contacting Amazon and eBay to request removal of plaintiff's products); *cf. Pandora Jewelers 1996, Inc. v. Pandora Jewelry, LLC*, No. 09-61490-Civ, 2011 WL 2174012, at *15, n.10 (S.D. Fla. June 2, 2011) (business relationship exists for tortious interference purposes based on plaintiff's advertising agreement with Google).

The Defendant LLC and Defendant Le interfered with Neven Eyewear's business relationship with Shopify and Meta by falsely asserting infringement of the fraudulently-obtained '673 Mark. Defendant Le was plainly aware of these relationships based on his prior work for Neven Eyewear. This interference was intentional and entirely unjustified, and it resulted in damage to Neven Eyewear in the form of shutdown accounts, lost advertising opportunities, lost sales, and damage to its business reputation. Thus, Neven Eyewear is likely to succeed on its tortious interference claim under Florida state law.

Based on the foregoing, Neven Eyewear satisfies the first requirement to obtain a preliminary injunction: it likely to succeed on the merits of each of their claims.

### C. NEVEN EYEWEAR WILL SUFFER IRREPARABLE HARM ABSENT A PRELIMINARY INJUNCTION

Absent a preliminary injunction enjoining Defendants from further extrajudicial enforcement of the fraudulently-obtained NEVEN EYEWEAR trademark, Neven Eyewear will suffer irreparable harm. Courts considering trademark disputes typically find that this element is satisfied because the defendant's impermissible use of the mark harms the plaintiff's business reputation. *See, e.g.*, *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) (affirming preliminary injunction); *Delta T, LLC v. Kale Fans Am. S.A. De C.V.*, No. 6:20-cv-170-Orl-40EJK, 2020 WL 1674328, at *3 (M.D. Fla. Feb. 25, 2020) (granting preliminary injunction). *See also Commodores Entm't Corp. v. McClary*, 648 F. App'x 771, 777 (11th Cir. 2016).

Though Defendants might not sell counterfeit or confusingly similar goods like most trademark cases, they are unquestionably causing Neven Eyewear irreparable harm and will continue to do so unless enjoined. Defendants have actively used the fraudulent NEVEN EYEWEAR trademark to shut down Neven Eyewear's online shops,

advertisements, and, consequently, sales. Over 20 million individuals are reached each month through Neven Eyewear's Meta advertising, resulting in approximately 25,000 purchases each month and $20 million in revenue. (Strauss Decl. ¶ 5.) These orders are all placed through Neven Eyewear's Shopify website. (Strauss Decl. ¶ 4.) Neven Eyewear's online presence is the lifeblood for its business and without it, it would be unable to reach customers or make any sales. Shutting down Neven Eyewear's Shopify and social media accounts, even for a brief period of time, results in the loss of countless sales and harm Neven Eyewear's business reputation. (Strauss Decl. ¶¶ 4-6.) Accordingly, this element is satisfied.

**D.    NEVEN EYEWEAR SATISFIES THE REMAINING PRELIMINARY INJUNCTION REQUIREMENTS**

Defendants will not be harmed by the requested preliminary injunction. The Defendant LLC is not the owner of a valid trademark—it obtained the NEVEN EYEWEAR trademark fraudulently. *See supra* Section II.B.1-2. It is also not selling any goods under the NEVEN name, and, thus, there is no threat to its business reputation if it is unable to use extrajudicial means to enforce the NEVEN EYEWEAR mark, such as using online takedowns. (Strauss Decl. ¶¶ 12, 18.) If the Defendant LLC believes that there is a valid ground for trademark infringement, it should be required to enforce its rights through the proper channel: litigation. Where, as here, the defendant will not be harmed by the entering of the requested injunction, this factor heavily weighs in favor of the moving party. *See Harris Corp. v. Nat'l Iranian Radio & Television*, 691 F.2d 1344, 1357 (11th Cir. 1982) ("Neither appellant argues that the preliminary injunction has or will cause it any harm. Since there would otherwise be a likelihood that Harris would suffer irreparable injury, the balance of harms weighs heavily in Harris's favor.").

Finally, the public interest favors issuing the requested preliminary injunction. Neven Eyewear is an active company that is currently selling products such as sunglasses in compliance with its properly registered Neven marks. Without a granting of the requested relief, Neven Eyewear will continue to have its ecommerce market disrupted, and the public will be unable to purchase reliable sunglasses from Neven Eyewear. Moreover, consumers will be confused if they are suddenly unable to purchase Neven Eyewear's sunglasses due to one of Defendants' impermissible takedowns. Public interest is served by preventing such consumer confusion in the marketplace. *See Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 263 F.3d 1200, 1209 (11th Cir. 2008) (referring to a "long line of trademark cases in which [the Eleventh Circuit] has explained the 'public interest' relevant to the issuance of a permanent injunction is the public's interest in avoid unnecessary confusion"); *Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001) ("[T]he public interest is served by preventing consumer confusion in the marketplace."); *SunAmerica Corp. v. Sun Life Assurance Co. of Can.*, 77 F.3d 1325, 1336 (11th Cir. 1996) ("[T]he public interest in preventing confusion around the marketplace is paramount.") (further quotation omitted). Thus, public interest weighs heavily in favor of granting the requested preliminary injunction.

## CONCLUSION

Because Neven Eyewear is likely to succeed on each of the causes of action, because Neven Eyewear will suffer irreparable harm absent a preliminary injunction, because Defendants will be unharmed by such injunction, and because such injunction serves the public interest, the Court should enjoin Defendants from using extrajudicial means to offensively assert the '673 NEVEN EYEWEAR mark, including, without limitation, through online takedowns on ecommerce websites and social media platforms.

Dated: July 1, 2024                    By: */s/Brian J. Abergel*

BRIAN J. ABERGEL, ESQUIRE
Florida Bar No. 111322
Peacock, & Abergel, P.L.L.C.
304 South Harbor City Blvd. Suite 201
Melbourne, FL 32901
Phone: (321) 255-5501 || Fax: (321) 255-5224
Primary email:  eFiling@TPAlegal.com
Babergel@TPAlegal.com
molly@tpalegal.com

*Co-counsel for Plaintiff Neven Eyewear, LLC*